UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
JESSICA RICHTER,

                Plaintiff,

            -against-

DESIGN AT WORK, LLC, and DAVID
CONROY,

                Defendants.
----------------------------------------------------------x

**MEMORANDUM & ORDER**
14-CV-650 (RRM) (LB)

ROSLYNN R. MAUSKOPF, United States District Judge.

      Plaintiff Jessica Richter, proceeding *pro se*, commenced this action on January 27, 2014. (Compl. (Doc. No. 1.)) On April 4, 2014, the Court granted Richter's request to proceed *in forma pauperis* and dismissed the complaint with leave to replead. (Apr. 4, 2014 Order (Doc. No. 7).) For the reasons that follow, Richter's amended complaint (Am. Compl. (Doc. No. 8)) is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B), and her motion for an extension to file an interlocutory notice of appeal ("Extension Motion" (Doc. No. 10)) is denied as moot.

## BACKGROUND

      For purposes of this Memorandum and Order, the Court assumes that the allegations Richter makes in the amended complaint are true.[1] Defendant David Conroy hired Richter as "a permanent part-time assistant" at defendant company Design at Work, LLC. (Am. Compl. at 5.)[2] Her duties included bookkeeping and administrative tasks, including preparing tax information for an outside accountant. (*Id.* at 5, 14.) She worked in this capacity from approximately June 1,

---

[1] At the pleadings stage, a court must assume the truth of all well-pleaded, non-conclusory factual allegations in a complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 123 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 1949–50 (2009)).

[2] Citations to the amended complaint refer to the ECF pagination.

1

2010, until February 8, 2013.  (*Id.* at 4.)  Conroy did not submit social security or Medicare taxes on Richter's behalf, nor did he provide her with W-2 Forms.  (*Id.* at 19.)  Conroy instructed Richter to prepare her own Forms MISC-1099 for tax years 2010, 2011, and 2012.  (*Id.* at 14, 77–78.)  Richter did not file these Forms MISC-1099 with the Internal Revenue Service ("IRS").  (*Id.* at 15.)  On February 8, 2013, Richter claims, Conroy discovered that Richter had not submitted these 1099 forms, and, according to Richter, "became enraged and yelled at me that I was going to get him in trouble with the IRS."  (*Id.*)  Richter replied that she was not required to submit these forms with her own tax returns and that "he wasn't allowed to pay me as an independent contractor."  (*Id.* at 16.)  "[A]fter a few more minutes of ranting he again ordered me to go home, so I left, assuming that I was fired."  (*Id.*)  Richter asserts that she was "terminated specifically for failing to submit my 1099 forms to the IRS."  (*Id.* at 17.)

Richter applied for unemployment compensation in November 2012 but was not awarded benefits until after her February 8, 2013 termination.  (*Id.* at 16–17.)  Richter claims Conroy attempted to block Richter's receiving such benefits and requested an administrative hearing.  (*Id.* at 18.)  An initial hearing was held on June 6, 2013 and then adjourned at Conroy's request, in order for him to seek counsel.  (*Id.*)  The hearing was rescheduled for July 16, 2013, but was cancelled when Conroy withdrew his objection.  (*Id.*)  Richter claims she "spent much time and money preparing for both hearings and experienced extreme emotional stress due to fears of losing my benefits which were my lifeline to supporting myself."  (*Id.*)  Richter alleges that Conroy sought the hearing "under false pretenses, as Mr. Conroy knew he had been improperly paying me as an independent contractor."  (*Id.*)  Richter also has "a pending action in US Tax Court for a determination of worker status for the purposes of FICA withholdings."  (*Id.* at 20.)

Richter asserts that the Court has jurisdiction pursuant to (1) 29 U.S.C. § 218c; (2) 26 U.S.C. § 62(e)(17)–(18); and (3) the "federal common law 'economic realities test'" for determining employee or independent contractor status under 26 C.F.R. § 31.3401(c), (Am. Compl. at 2–4); and (4) the Fair Labor Standards Act ("FLSA") (*id.* at 17). The injuries Richter alleges are "severe emotional stress" and "loss of time and money," for which she seeks unspecified punitive damages and costs. (Am. Compl. at 20.)[3]

## DISCUSSION

**I. Standard of Review**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quoting Fed. R. Civ. P. 8(a)(2)), and each averment must be "concise[] and direct,'" *id*. (quoting) Fed. R. Civ. P. 8(d)(1)). The plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *Pro se* complaints must satisfy this plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), but the Court reviews such allegations with "special solicitude." interpreting the allegations to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (*per curiam*). Nonetheless, a court must dismiss a complaint brought *in forma pauperis* if the complaint "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary

---

[3] Also pending is Richter's May 22, 2014 motion for an extension of time to file an interlocutory notice of appeal concerning the April 4, 2014 Order. (Doc. No. 10.) That motion is denied as moot in light of this Memorandum and Order.

relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If a liberal reading of the pleading gives any indication that a valid claim might be stated, the court must grant leave to amend. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

A plaintiff must establish that the court has subject matter jurisdiction over the action. *See, e.g.*, *Rene v. Citibank NA*, 32 F. Supp. 2d 539, 541–42 (E.D.N.Y. 1999). "Failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). Federal subject matter jurisdiction is available only when a federal question exists, or when plaintiff and defendants have complete diversity of citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. § 1331–32. To invoke federal question jurisdiction, a plaintiff's claim must arise "under the Constitution, laws, or treaties of the United States." *Id*. § 1331.

Additionally, "[i]n every federal case, the party bringing the suit must establish standing to prosecute the action." *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11 (2004). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "'The irreducible constitutional minimum of standing' derives from Article III, Section 2 of the U.S. Constitution, which limits federal judicial power to 'cases' and 'controversies.'" *Natural Resources Defense Council, Inc. v. United States Food and Drug Admin.*, 710 F.3d 71, 79 (2d Cir. 2013) (quoting U.S. Const. art. III § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)). "To establish that a case or controversy exists so as to confer standing under Article III, a plaintiff must satisfy three elements: (a) the plaintiff must suffer an injury in fact, (b) that

injury must be fairly traceable to the challenged action, and (c) the injury must be likely to be redressed by a favorable decision of the federal court." *Id.* (internal quotation marks omitted).

## II. Analysis

### A. 29 U.S.C. § 218c

Richter purports to bring this action pursuant to 29 U.S.C. § 218c ("Section 218c"), which is part of the FLSA. Section 218c(a)(5) prohibits employers from discharging an employee because the employee has "objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of *this title* (or amendment), or any order, rule, regulation, standard, or ban under this title (or amendment)." 29 U.S.C. § 218c(a)(5) (emphasis added).

President Barack Obama signed Section 218c into law in March 2010, as part of the Patient Protection and Affordable Care Act (the "PPACA"), Pub. Law 111-148, 124 Stat. 119. It is unclear from the face of Section 218(c)(5) whether "this title" refers to Title XXIX of the United States Code, which relates generally to labor, or to Title I of the PPACA.[4] *Compare Rosenfield*, 2012 WL 2572984, at *2–4 (holding that Section 218c refers to Title I of the PPACA, and not Title XXIX of the United States Code, reasoning, *inter alia*, that the FLSA contains its own anti-retaliation provision, 29 U.S.C. § 215); *with Wiley v. Asplundh Tree Expert Co.*, No. 13 CV 2952, 2014 WL 1017208, at *8 (S.D.W. Va. Mar. 17, 2014) ("Section 218c of

---

[4] Title I of the PPACA contains several prohibitions on discrimination. Most of Title 1's provisions are codified at Title XLII of the United States Code, though a "substantial minority" are codified at Title XXIV, and the provision at issue (Section 218c) is codified at Title XXIX. *See Rosenfield v. GlobalTranz Enters., Inc.*, No. 11 CV 2327, 2012 WL 2572984, at *1 & n.1 (D. Ariz. July 2, 2012) (citing, *e.g.*, Title I § 1001 (enacting what is now codified at 42 U.S.C. § 300gg-16, which prohibits group health plans from "establish[ing] eligibility rules that have the effect of discriminating in favor of higher wage employees"); *id*. § 1201 (enacting what is now codified at 42 U.S.C. § 300gg-4, which prohibits certain health insurers from discriminating against applicants based on, *e.g.*, genetic information); *id*. § 1557 (enacting what is now codified at 42 U.S.C. § 18116, which prohibits health plans that receive federal funding from discriminating against plan members based on race, gender, and like characteristics)).

the FLSA prohibits retaliation by an employer against an employee who has assisted or participated in a proceeding *concerning a violation of the [FLSA]*" (emphasis added)); *Falk v. City of Glendale*, No. 12 CV 925, 2012 WL 2390556, at *5 n.11 (D. Colo. June 25, 2012) ("If Plaintiff's [complaints to her employer] centered not on discrimination, but on workplace conditions, then she must consider whether an FLSA retaliation claim provides an appropriate remedy.") (citing Section 218c). Regardless, Richter does not allege that Conroy discharged her because she objected to, or refused to participate in, any activity, policy, practice, or task that she reasonably believed violated either the PPACA or the FLSA.[2] Accordingly, she fails to state a claim under Section 218c.

Moreover, even if Richter's claim fell within the protections of Section 218c, that provision requires a plaintiff to exhaust administrative remedies before filing a civil action in court. Section 218c refers to the procedures of 15 U.S.C. § 2087(b) for an aggrieved employee to file a complaint with the Secretary of Labor. Under these procedures, the employee must, "not later than 180 days after the date on which such violation occurs, file . . . a complaint with the Secretary of Labor alleging such discharge or discrimination and identifying the person responsible for such act." 15 U.S.C. § 2087(b)(1). A plaintiff may bring suit in federal district court only if "the Secretary has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination." *Id*. § 2087(b)(4); *see Jallali v. USA Funds*, No. 11 CV 62510, 2012 WL 3291873, at *5 (S. D. Fla. Aug. 13, 2012) (dismissing complaint, where plaintiff failed to establish compliance with 15 U.S.C. § 2087(b)).

---

[2] The FLSA includes its own anti-retaliation provision, 29 U.S.C. § 215, which prohibits an employer from discharging or discriminating against an employee for filing any complaint related to the FLSA's provisions. 29 U.S.C. § 215(a)(3). Richter does not allege that Conroy violated the FLSA or retaliated against her for filing a complaint related to its provisions.

Richter does not allege that she exhausted her administrative remedies. For this additional reason, she fails to state a claim under Section 218c.

### B. 26 U.S.C. § 62

Richter also purports to bring this action under 26 U.S.C. § 62, a provision of the Internal Revenue Code that defines "adjusted gross income" in terms of which tax deductions are permissible. 26 U.S.C. § 62(a). Specifically, Richter cites Section 62(e), which defines "unlawful discrimination" for purposes of Section 62(a)(20), which, in turn, permits deductions for attorney fees and court costs related to actions involving claims of "unlawful discrimination." *Id.* §§ 62(a)(20), (3). Section 62 is definitional; it does not create a private right of action against an employer for unlawful discrimination. *United States v. Richard Dattner Architects*, 972 F. Supp. 738, 743–44 (2d Cir. 1997) ("A section that merely defines should not be relied upon to show that Congress intended to create a private right of action to enforce what is included in or excluded from the definition.") Accordingly, Section 62 does not confer subject matter jurisdiction.

### C. 26 C.F.R. § 31.3401(c)-1

Finally, Richter asserts that 26 C.F.R. § 31.3401(c)-1 provides a basis for federal question jurisdiction regarding the status of a worker under the "federal common law 'economic realities test.'" (Am. Compl. at 4.) This regulation was promulgated pursuant to 26 U.S.C. § 7805, which provides that the Secretary of the Department of the Treasury "shall prescribe all needful rules and regulations for the enforcement of [Title XXIV]." More specifically, this regulation defines "employee" for purposes of the government's "collection of income tax at [the] source on wages." 26 C.F.R. § 31.0-1. The regulation does not provide a private right of

action. *See Engelhardt v. Beth Israel Med. Ctr.*, No. 00 CV 2239, 2000 WL 1871736, at *2 (S.D.N.Y. Dec. 20, 2000) (holding that a "purely definitional" regulation "cannot be construed as providing a cause of action"); *see also Shakhnes v. Berlin*, 689 F.3d 244, 251 (2d Cir. 2012) ("[I]f the regulation defines the content of a statutory provision that creates no federal right . . . the regulation is too far removed from Congressional intent to constitute a federal right.") (quoting *Harris v. James*, 127 F.3d 993, 1009 (11th Cir. 1997) (internal quotation marks omitted)). Accordingly, this regulation does not confer subject matter jurisdiction.

### D. FLSA

Richter also makes a general allegation that defendants violated her FLSA rights by fraudulently classifying her as an independent contractor. (Am. Compl. at 17.) In asking the Court to apply the "economic reality" test, Richter may have intended to invoke a test that courts apply to determine whether an individual is an employee or an independent contractor under the FLSA. *See, e.g., Barfield v. New York City Health & Hosps. Corp.*, 537 F.3d 132, 141 (2d Cir. 2008) (quoting *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961)). Richter does not, however, allege that Conroy violated the FLSA. Accordingly, as the Court explained in its April 4, 2014 Memorandum and Order, any judicial determination concerning Richter's previous employment status under the FLSA would be advisory. The Court declines to issue a purely advisory opinion where Richter alleges no violation of the FLSA.

For the foregoing reasons, the amended complaint is dismissed.

**CONCLUSION**

The amended complaint is dismissed, and the motion for an extension of time to file an interlocutory notice of appeal is denied as moot. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and therefore, *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to close this case in accordance with the accompanying Judgment, mail plaintiff a copy of this Memorandum and Order and the Judgment, and note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
July 3, 2014

*Roslynn R. Mauskopf*

_____
ROSLYNN R. MAUSKOPF
United States District Judge